## HAGGE v. MORAN, ET AL.

(No. 880;  Decided November 1st, 1917;  168 Pac. 248.)

REFORMATION OF INSTRUMENTS—MUTUAL MISTAKE—EVIDENCE SUF-
FICIENT TO SUSTAIN DECREE OF REFORMATION—NEGLIGENCE—RE-
LIEF ON GROUND OF MUTUAL MISTAKE—LACHES—APPEAL AND
ERROR—SUFFICIENCY OF RECORD.

1. In an action for the reformation of a deed on the ground
   of mutual mistake in erroneously describing lands, evi-
   dence that neither plaintiff nor defendant could describe
   by government subdivisions the land he owned and that the
   instrument did not describe lands intended to be conveyed,
   held sufficient to sustain a decree reforming the deed.

2. In an action for the reformation of a deed, where it is
   shown that parties to the deed were unskilled in describ-
   ing lands by legal subdivisions and apparently did the best
   they could, evidence held insufficient to show such negli-
   gence of the parties as to prevent a reformation of the
   land descriptions.

3. Where a deed in April, 1909, contained mistaken descriptions
   of property, and the grantee made some claim of owner-
   ship in 1912, or 1913, but did not attempt to take posses-
   sion until July, 1914, the grantor was not guilty of laches
   in failing to sue for reformation of the deed until January,
   1915.

4. A finding of the trial court as to matters of fact will not be
   disturbed on appeal where several witnesses at the trial
   testified from maps and plats in evidence, by pointing to
   places and tracts of land which the District Court could
   see and thereby have an understanding of the testimony
   which it is impossible to obtain by reading the record of
   the testimony.

ERROR to the District Court, Platte County; HON. WIL-
LIAM C. MENTZER, Judge.

Action by John Moran, et al., against Ferdinand J.
Hagge for the reformation of a conveyance of land on the
ground of mutual mistake in descriptions. A decree was
entered for plaintiffs, and defendant brings error.

*Marion A. Kline* and *Oscar O. Natwick,* for plaintiff in
error.

To warrant reformation on the ground of mistake the
evidence must be clear that the mistake was mutual.

(Grieve v. Grieve, 15 Wyo. 358, 89 Pac. 569.) The burden is upon the plaintiff. (Bodwell v. Heaton (Kan.), 18 Pac. 901; Owen v. City of Tulsa (Okla.), 111 Pac. 320; Howland v. Blake, 97 U. S. 624; Bank v. Burton (Utah), 53 Pac. 215; McGuigan v. Gaines (Ark.), 77 S. W. 52.) The courts are more reluctant to reform deeds than ordinary written contracts. (Thallman v. Thomas, 111 Fed. 277; Jones v. Jones, 88 Miss. 784, 41 So. 373; Fuller v. Knapp, 82 Vt. 166, 72 Atl. 688; Strout v. Lewis, 104 Mo. 65, 71 Atl. 137; Parker v. Carter, 91 Ark. 162, 120 S. W. 836; Bibb v. Coal & Iron Co., 109 Va. 261, 64 S. E. 32; Hope v. Bourland, 21 Okla. 864, 98 Pac. 580; Lessey v. Demarest (N. J.), 72 Atl. 14; Hand v. Cox, 164 Ala. 348, 51 So. 519; McKnight v. Witherington, 94 Ark. 621, 127 S. W. 727; Fairbanks v. Harvey, 83 Vt. 283, 75 Atl. 268.) Reformation will not be decreed where negligence is shown. (Grieve v. Grieve, supra; Weltner v. Thurmond, 17 Wyo. 268, 98 Pac. 590; Weaver v. Robertson, 67 S. E. 664; Waslee v. Rossman (Pa.), 80 Atl. 643; 20 Am. & Eng. Ency. of Law, 851; Solenberger v. Strickler (Va.), 65 S. E. 566; Farrell v. Bouck (Neb.), 84 N. W. 260, 101 N. W. 1018; Cherry v. Brizzolara (Ark.), 116 S. W. 668; Pope v. Hoopes, 84 Fed. 929; Grymes v. Sanders, 93 U. S. 55; Bibber v. Carville (Me.), 63 Atl. 303; Bonney v. Stoughton (Ill.), 13 N. E. 833; Cape Fear Lumber Co. v. Matheson (S. C.), 48 S. E. 111; Berry v. Planter's Bank, 3 Tenn. Ch. 69; Ferrell v. Ferrell, 53 W. Va. 515, 44 S. E. 187; Commissioners v. Younger, 29 Cal. 176; Hawkins v. Hawkins, 50 Cal. 558; Kimmell v. Skelly, 130 Cal. 555, 62 Pac. 1067; Kennerty v. Phosphate Co., 21 S. C. 226; Thompson v. Ela, 58 N. H. 490; Glenn v. Statler, 42 Ia. 107; Marshall v. Westrope, 98 Ia. 324, 67 N. W. 257; Brooks v. Hamilton, 15 Minn. 26; Robertson v. Glass, 94 Ind. 211.) Plaintiff must first request defendant to correct the instrument. (Popijoy v. Miller, 133 Ind. 19, 32 N. E. 713; Black v. Stone, 33 Ala. 327; Brainerd v. Arnold, 27 Conn. 617; Axtel v. Chase, 77 Ind. 74; May v. Pleary, 138 S. W. 165.) A mistake contrary to the intention of the

parties must be shown. (Keith, et al., v. Woodruff (Ala.), 34 So. 911; 15 Ballard on Real Property, p. 796; Fife v. Cate, 84 Vt. 45, 77 Atl. 947; Fairbanks v. Harvey, 83 Vt. 283, 75 Atl. 268; Tung v. Weyand (Ohio), 14 Wkly. Law Bul. 143; Owen v. City of Tulsa (Okla.), 111 Pac. 320.) It is not shown by the evidence that the parties knew the description of the land intended to be conveyed, hence there was no mistaken intention.

*John D. Clark,* for defendants in error.

Defendant in error did not have access to his maps or descriptions at the time the deed was made; part of the land was correctly described. A mutual mistake occurred in describing section 27 instead of section 26. Plaintiff did not take possession of the lands in section 27, a circumstance showing that it was not intended that lands in section 27 should pass. The main contention of plaintiff in error is that defendant in error executed the instrument without reading it, but his reading of the deed would not have shown the mistake, for the reason that he was mistaken in the instructions given his attorney, who prepared the deed. All mistakes involve some degree of carelessness and it is incorrect to say that no relief will be granted to one where the error is due to his own carelessness, and it must be true that negligence will prevent relief only under special circumstances. The application of the general principle in the more narrow field of the reformation of instruments is fully covered under that title in 34 Cyc. 899. (See also Pomeroy Eq. Jur., Sec. 856.) An opinion indicating how the argument against granting relief in any case where negligence is shown has completed a circle is that of the Supreme Court of Indiana in Baker v. Pyeatt, 108 Ind. 61, 9 N. E. 112, where relief was denied because the parties did read the deed. The two Wyoming cases, Weltner v. Thurmond, 17 Wyo. 268, 98 Pac. 590, and Grieve v. Grieve, 15 Wyo. 358, 89 Pac. 569, cited by plaintiffs in error, involved instruments that had been signed without being read. In both cases the only mistake was as to what the words of the

contract were, and not as to the application of those words to extrinsic facts, and the ordinary and usual precaution of reading the instrument would have disclosed the error. They are not in that respect applicable to the case at bar, for the reason that there was no mistake as to the contents of the deed here in suit, and no misapprehension as to the words contained therein. It fulfilled the instructions of the parties, and the reading of it would not have given rise to any suspicion of error. The mutual mistake consisted in failing to express the intention of the parties because the words used did not fit the extrinsic facts. Citations made from 20 A. & E. Enc. of Law (2nd Ed.) ; Waslee v. Rossman and Weaver v. Robinson, are not applicable to the facts here. A mere denial by defendant or conflict of testimony as to the mistake does not institute a denial of relief, and the decision of the trial court upon such conflict of evidence is conclusive upon this court. (Sullivan v. Moorehead, 95 Cal. 157, 33 Pac. 796.) A demand for reformation before bringing suit is not a prerequisite to the right to maintain an action for reformation. (Jones v. McNealy, 139 Ala. 379, 101 A. S. R. 38; Lucas v. Lavertue, 88 Ind. 277.) The existence of a mortgage lien upon the lands in favor of one Freaney is not a bar to an action for reformation.

BEARD, JUSTICE.

The defendant in error, John Moran, brought an action against the plaintiff in error, and defendants in error, Thomas E. and Mary A. McNamara, alleging a mutual mistake in the description of certain lands as described in a deed from Moran to McNamara, and a deed from Mc-Namara to Hagge, and praying for a reformation of said deeds and for general relief. Hagge alone answered, denying that there was any mistake in the deeds. The District Court found in favor of the plaintiff below and entered a decree accordingly, from which Hagge brings error.

The main contention of plaintiff in error is that the decision of the District Court is not sustained by sufficient

evidence. There is not much controversy between counsel as to the rules of law governing the case. It is not claimed that the mistake, if it occurred, was not material to the transaction; and counsel substantially agree that the evidence sufficient to warrant a court of equity in reforming the instruments and granting relief must be clear, convincing and satisfactory, and that the mistake must not have been the result of the negligence of the party claiming it.

It appears that Hagge and Moran were not on friendly terms, and that Hagge desired to purchase certain land owned by Moran, and in order to do so procured McNamara to purchase it for him. Both Hagge and his wife testified, in substance, that at the time the arrangement was made with McNamara they had a map or plat of the township in which the land was situated and marked each forty-acre tract they desired to purchase by placing an X thereon, with pen and ink. That McNamara did not take the plat or make any memorandum of the forties so marked. That the land they desired was land which Moran had "script." It appears that in pursuance of that arrangement McNamara met Moran in Cheyenne; that they went to the court house, accompanied by their attorney, and endeavored to ascertain the descriptions of the lands to be conveyed. After doing so they gave to the attorney the descriptions of the lands which they had selected, to be inserted in the deed, which was done, and are as follows: "The north half of the northwest quarter (N½ NW¼), the southeast quarter of the northwest quarter (SE¼ NW¼) and the northwest quarter of the southwest quarter (NW¼ SW¼) of section twenty-six (26), and the south half of the southeast quarter (S½ SE¼), section twenty-seven (27), in township thirty (30) north of range sixty-nine (69) west of the 6th principal meridian, the whole containing 240 acres, be the same more or less." The alleged mistake being that a part of the lands intended to be described and conveyed was the south half of the northeast quarter of said section twenty-six instead of the south half of the southeast quarter of said section twenty-seven. We think it clearly appears that

the parties were not mistaken as to the descriptions contained in the deed, but their mistake was in supposing and believing that the description applied to the lands intended to be conveyed. The deed from Moran to McNamara was dated April 1, 1909, and the deed from McNamara to Hagge was dated April 3, 1909, and contained the same description and was evidently copied from the former. Hagge testified that he asked McNamara if he got the land and he said "I got all that joins you, but I didn't get all you wanted." That he did not examine and find out what land he got; that he did not know what land McNamara had got, but "had an idea it was the east 80 he didn't get." That he was satisfied with McNamara's statement that he had all that joined him, which was all he was anxious to get. The plat he claimed to have marked was introduced in evidence and shows the lands in section 26, described in the deed, and also the south half of the northeast quarter of that section are so marked; but only the southeast quarter of the southeast quarter of section 27 is marked, and Hagge admitted on cross-examination that that was all he had marked in that section. McNamara testified that Hagge did not produce any map or plat and that he had never seen the plat introduced in evidence until the day of the trial. That the land he was to purchase was outside the fences and was dry grazing land except there was a watergap on one 40. That Hagge did not mention the 80 in section 27, which was in Moran's enclosure, and a part of it was watered by Moran's ditch and was in alfalfa. That the 80 in 27 was not contemplated by him and Moran, but instead it was the south half of the northeast quarter of section 26 that was in contemplation. Moran testified that it was the last above described 80 and not the one in 27 that was intended; that it was grazing land, outside the fence, with the exception of 70 or 80 acres in Hagge's enclosure which was the subject of the transaction. (We cannot learn from the record what land Hagge had enclosed.) The deputy assessor for 1914 testified that the assessment schedule of Hagge's lands for that year was made up from

information given him by Hagge and a map that Hagge had. That Hagge gave him the south half of the northeast quarter of section 26, and did not give him the 80 in 27. That in that year Moran told him that he did not know the descriptions of his lands and that he (the assessor) would have to go to the records, and had said the same thing the year before. That in looking up the records he found the 80 in 27 was in Hagge's name and the 80 in question in 26 was still in Moran's name. That he called Hagge's attention to it and asked him to come to the office, and in the conversation at first Hagge did not think he owned the 80 in 27. It is admitted that Moran cut the hay on the 80 in 27 in 1910, 1911, 1912 and 1913, and that Hagge cut it in 1914 and 1915 and changed the fence thereon about July, 1914. There is testimony that in 1912 or 1913 Hagge forbid Moran's employees cutting the hay and claimed to own the land, two witnesses testifying that he said, in substance, that he did not know how he came to get it, except that Moran had made a mistake. A witness for Hagge testified that in 1910 or 1911 Moran asked him if Hagge was going to cut that hay. That he did not know at that time to what he referred, but supposed it must have been the 80 in 27. That some time afterwards Hagge said "someone else had told him the land belonged to him, but he didn't think so; that Moran thought it belonged to him, but it didn't." The following stipulation, in writing, as to certain facts was introduced in evidence:

"1. That the assessment schedule of the lands of the plaintiff in the year 1909 was made out by the county assessor's office upon the statement of the plaintiff that he could not describe his lands and that the description could be procured from the county records; the assessment schedule of the defendant Hagge was executed by him on May 14, 1909, and did not describe either tract of land in controversy; that both tracts of land in controversy were assessed to the plaintiff in the year 1909, and the taxes upon the same were paid by him.

"2. That the assessment schedule of the lands of the defendant Hagge for the year 1910 was not made out by him, but was made out by the county assessor's office, and the assessment schedule of the lands of the plaintiff for the year 1910 was made out by the county assessor's office and signed by the plaintiff after the first schedule signed by him had been returned for the purpose of making corrections which the plaintiff stated he could not make; that in the year 1910 the south half of the southeast quarter of section 27, township 30, range 69, was assessed to the defendant Hagge and the taxes thereon paid by him, and the south half of the northeast quarter of section 26 in said township was assessed to the plaintiff and the taxes thereon paid by him.

"3. That in the year 1911 the assessment schedule of the lands of the plaintiff was signed by him, and included neither of the tracts in controversy; the assessment schedule of the lands of the defendant Hagge for the said year was executed by him and included the south half of the northeast quarter of said section 26, the tax upon which land was assessed against the defendant Hagge and paid by him; that in the year 1911 the south half of the southeast quarter of said section 27 was not assessed to any person, and no one paid the tax thereon.

"4. That in the year 1912 the assessment schedule of the lands of the defendant Hagge was executed by him and included the south half of the northeast quarter of said section 26, and also the west half of the southeast quarter of said section 27, and said lands were assessed to him and the tax thereon paid by him; that the assessment schedule of the lands of the plaintiff for the said year was executed by him, with an added note that he was not certain of the descriptions, and did not include either tract of land in controversy, neither of which was assessed to him nor the taxes thereon paid by him. The southeast quarter of the southeast quarter of said section 27 was not assessed to anyone in the year 1912, and no one paid any taxes thereon."

We have set out the substance of the more material portions of the evidence and, although it is conflicting in many instances, we believe the entire evidence, when fully and fairly considered, amply sustains the decision of the District Court. The deeds in question each contain what all of the parties at the time believed to be the correct description of the lands to be conveyed; but they were mistaken. That neither Moran nor Hagge could describe by government sub-divisions the lands he owned or claimed to own is apparent. Moran admitted to the deputy assessor that he could not do so; and when Hagge undertook it he failed in most instances. He omitted both tracts in controversy from his assessment schedule in 1909, which he signed but a few weeks after he received his deed; and in 1911 he returned the 80 in 26, and omitted the 80 in 27. And again in 1912 he returned the 80 in 26, and the west half of the southeast quarter of 27, omitting the 40 in that section marked on his plat as one which McNamara was to buy. He did not take possession until July, 1914, giving as his reason therefor that he did not want trouble. Why he anticipated trouble in taking possession of that part of the land described in the deeds is not satisfactorily explained otherwise than upon the theory that he realized that a mistake had been made. Nor do we think the evidence discloses such negligence as to defeat a reformation of the descriptions. The parties were not skilled in describing lands by legal sub-divisions, and apparently did the best they could, considering their ability in that line.

It is also contended that Moran was guilty of laches in not sooner commencing his action. But we do not think that position well taken. While Hagge made some claim of ownership of the 80 in 27 in 1912 or 1913, he did not attempt to take possession until July, 1914, and the action was commenced January 8, 1915.

There is a further reason why this court cannot disturb the decision of the District Court on the ground of the insufficiency of the evidence. Several witnesses testified from maps or plats which are in evidence; but in doing so evi-

dently pointed to certain places or tracts of land which the District Court could see and understand, but the testimony is unintelligible to one reading the record. For instance, the deputy assessor testified that he made a map from which he testified (but which we fail to find in the record)': "Q. I call your attention to all of Mr. Moran's land blocked together with the exception of the south half of the southeast quarter of section 27? A. Yes, I erased this, you see, and put in Moran's name in red. Q. But these lines are straight lines and this piece is blocked off by itself? A. No. See here is a line through Mr. Hagge's. Q. But this piece is blocked off? A. Yes, it is now. Q. And it was when you made it? A. This is not Hagge's land. It runs through here, and this is the piece we couldn't get straight." The testimony of other witnesses in several places is in a similar situation. While we have in the record all of the verbal testimony, maps and plats, and documentary evidence introduced on the trial, it is apparent that the District Court seeing the places indicated and pointed out on the plats by the witnesses had an understanding of the testimony which it is impossible to obtain by reading the testimony. We are of the opinion that the decision is sustained by the evidence and that the law was properly applied thereto. We think the evidence clearly shows that a mistake was made, and that it was mutual. And as the proper relief was granted, the judgment and decree of the District Court is affirmed.

POTTER, C. J., concurs.                    *Affirmed.*